UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOE LOUIS MAYE<br>4755 Maria Court<br>Grimesland, NC  27837<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>TONYA JONES-SAMPSON<br>15218 Eve Way<br>Brandywine, MD 20613<br><br>　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

　　　Plaintiff Joe Louis Maye brings this action against Defendant Tonya Jones-Sampson, and complains, alleges, and demands as follows:

**NATURE OF THE CASE**

　　　1.　　This lawsuit seeks to judicially establish the sole ownership of the real property at 1632 Q Street, SE, Washington, DC in the name of the Plaintiff and to void a fraudulent September 15, 2017 deed that purports to convey an interest in the property to the Defendant. It also seeks monetary and punitive damages against the Defendant for her fraudulent procurement and filing of that deed.

**JURISDICTION AND VENUE**

　　　2.　　This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1).  This case is between citizens of different States, and the amount in

1

controversy, exclusive of interest and costs, exceeds $75,000.

3. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this matter occurred in this judicial district and the real property that is the subject matter of this dispute is in this judicial district.

## PARTIES

4. Plaintiff Joe Louis Maye is a citizen of North Carolina, residing at 4755 Maria Court, Grimesland, North Carolina 27837.

5. Defendant Tonya Jones-Sampson is a citizen of Maryland, residing at 15218 Eve Way, Brandywine, Maryland 20613.

## FACTS

6. Plaintiff Joe Louis Maye is 85 years old. He lived and worked for most of his life in the District of Columbia, including 42 years as the Supervisor for Monument Parking Company, Inc.

7. In 1976 Plaintiff and his wife, Virginia Dale Maye, purchased the home at 1632 Q Street, SE in the District of Columbia (the "Property") as tenants by the entirety. They were married for 42 years.

8. Both Plaintiff and Virginia Dale Maye had children by prior relationships. This included Plaintiff's stepson Samuel Jones and stepdaughter Defendant Tonya Jones (later Jones-Sampson). Defendant lived at the Property until around 1988, when she married and moved to her own residence with her husband.

9. Virginia Dale Maye died on December 20, 2014; by operation of law, the Property then became the property of the Plaintiff in fee simple.

10. At the time of her death, Virginia Dale Maye was temporarily allowing her adult

2

son, Samuel Jones, to live at the Property with her and her husband.

11.     In 2016 the widowed Joe Louis Maye decided to move to Grimesland, North Carolina to be closer to his daughter, Wanda Klein, and his son, Joe Louis. Plaintiff intended to sell the Property for retirement income when the time came, but graciously allowed Samuel Jones to remain living on the premises temporarily in the interim. At some point in time, Defendant's son, Markel Jones, began staying at the Property.

12.     After his wife died, Plaintiff had very limited contact with Defendant.  But because her brother and son were living at the Property, Defendant did occasionally for the benefit of Plaintiff handle some of the paperwork relating to the Property, including seeking senior tax relief with the District of Columbia and offering to assist him in getting such documents notarized.  Plaintiff did execute a limited power of attorney granting Defendant power to seek a "senior citizen tax discount status" which Defendants said she could assist in getting for real estate tax relief on the Property.  As part of that process, Defendant had Plaintiff execute certain documents such a power of attorney which she claimed were necessary for that tax relief.

13.     Relying on Defendant's representation as to the purpose of those documents, Defendant took Plaintiff, then 79 years old, to a notary public near her residence in Maryland on the morning of September 15, 2017. At that time and trusting what Defendant told him, Plaintiff unwittingly "acknowledged" that he had signed documents brought by Defendant to the notary. However, he understood this was done for senior tax relief on his Property and nothing more. Defendant then took the papers from the notary and inserted a page with a forged signature into the instruments.  She then rushed to the Office of the Recorder of Deeds in the District of Columbia later that same morning to file the faux and fraudulent Deed that is the subject matter

of this lawsuit.

14. In spring 2023, Plaintiff, then 85 years old, decided he must sell the Property. In preparation, Plaintiff contacted Defendant in or around May 2023 to convey his intention to sell because Defendant's brother and son were living at the Property and would have to make new housing arrangements. Defendant initially acknowledged that it was Plaintiff's property to sell. Shortly thereafter, however, Defendant told Plaintiff that she was claiming an interest in the Property and that Plaintiff would have to call her attorney about this. At the time, Defendant did not identify who her alleged attorney was.

15. Unaware of any basis upon which Defendant might claim a legal interest in the Property, Plaintiff sought legal assistance as to the issue of ownership.

16. Thereafter, upon investigation of the records at the Office of the Recorder of Deeds by Plaintiff's attorney, it was discovered that there was a September 15, 2017, Deed (attached hereto as Ex. A) which is purported to convey a joint tenancy with right of survivorship in the Property to Defendant Tonya Jones-Sampson. The "Deed", however, appears to have been copied by a layperson from some other deed, but this Deed omits key language that would be found in an instrument intended to create an interest in real estate.

17. Upon further investigation, it was discovered that Defendant caused this fraudulent Deed to be filed with the Recorder of Deeds on the morning of September 15, 2017. To prevent Plaintiff from discovery of the faux Deed, Defendant caused the original of the deed to be returned to "Joe Louis Maye at 1632 Q Street SE." Defendant knew that Plaintiff was not living at that address at the time and would not receive the original manipulated Deed returned by the Recorder of Deeds.

18. The faux Deed says that the property interest being conveyed by Plaintiff is to

4

"Tonya Jones-Sampson, his daughter…". It appears that Defendant used this false representation to fraudulently avoid payment of thousands of dollars to the District of Columbia in transfer and recordation taxes that she otherwise would have had to pay when she recorded the Deed (because transfers to a stepchild are not exempt from transfer and recordation taxes).

19. Upon examination of the Deed, it is apparent that the faux Deed does not bear the legitimate signature of the Plaintiff. That signature was affixed to the document by someone else. In addition, the Grantor's signature line on the faux Deed is on a separate page (page two (2)) from the alleged granting language (page one (1)) and separate from the notary acknowledgment and stamp (page three (3)). On page one (1), there were nearly five (5) inches of blank space, plenty of space for the Grantor's signature to appear after the purported "granting" language. The second page contains what purports to be the Plaintiff's signature, but the entirety of that page is blank except for that signature (which is not the Plaintiff's signature). Particularly, there were eight (8) inches of space beneath the page two (2) signature line available for the notary acknowledgment and stamp, but the entirety of that space is nonetheless left blank for no apparent legitimate reason. It is thus apparent that a forged signature of Plaintiff was inserted as page two (2) of the faux Deed.

20. Upon this discovery, Plaintiff, through counsel, asked Defendant for access to the original of this purported Deed for examination by a qualified questioned documents examiner. However, Defendant refused – and continues to refuse – to allow examination of the original instrument, even though Plaintiff would be, by the terms of the instrument, the co-owner of the Property at issue and would have an absolute right to possession of the instrument. The request for access has been made on multiple occasions and refused by Defendant in every instance.

21. It appears that Defendant will not allow forensic examination of the faux Deed

5

because she knows that such an examination will show that the instrument is defective and that Plaintiff did not actually convey an interest in the Property to her.

22. Plaintiff has a daughter and son with whom he is very close and who are the sole beneficiaries in his will. The Property is by far Plaintiff's largest asset; the Property is unencumbered and has a fair market value estimated at $400,000. It would make little sense for Plaintiff to have conveyed the Property solely to Defendant, only one of three stepchildren, and not to his daughter and son, who are actively caring for him in North Carolina and who are the natural objects of his bounty and affection.

23. Whoever constructed the faux Deed dictated in its first paragraph that the Deed was to convey property belonging to "Joe Louis Maye and Virginia Dale Maye." However, Virginia Dale Maye, having been deceased at the time of the Deed's apparent conception, could not convey any interest, as her Property interest had already transferred automatically in its entirety to Plaintiff, her surviving spouse, upon her death in 2014. As such, the alleged granting party did not legally exist in the year 2017 when the faux Deed was conceived.

24. The cobbled faux Deed does not reflect any intent on the part of Plaintiff to convey any interest in the Property to Defendant. The faux Deed on its face fails to convey any real or existing interest in the Property because, *inter alia*, the document fails to contain any language actually granting or transferring an interest in the Property.

25. Plaintiff did not, and never intended to, convey any interest in the Property to Defendant.

26. Defendant paid nothing for her alleged interest in the Property and there was no other consideration incident to Defendant's name being titled on the Property. Since the alleged conveyance to her, Defendant has paid none of the property taxes on the Property or paid any of

6

the insurance or other expenses of the Property, and she has not offered to pay any of those expenses. All such taxes, insurance, and other expenses have been paid fully by Plaintiff. Plaintiff made all such payments on the Property because of his belief that he was the sole owner of the Property and without knowledge that Defendant had allegedly taken a secret interest in the Property.

27. Defendant, nor any of her relatives living at the Property at Defendant's invitation, have paid rent of any kind to Plaintiff.

## COUNT I
(Declaration that the faux Deed is Void and that Plaintiff is the Sole Owner of the Property)

28. Plaintiff incorporates and re-alleges paragraphs 1-27 above as if fully set out in this Count.

29. Plaintiff is the sole lawful owner of the Property in fee simple, and that ownership is unencumbered. The faux Deed does not convey any interest in the Property to the Defendant or anyone else.

30. The faux Deed is void *ab initio* and was improperly and fraudulently procured and then filed by the Defendant with the Recorder of Deeds.

31. The purported signature for the Grantor on the faux Deed is not the true and genuine signature of the Plaintiff. Defendant improperly and fraudulently caused that faux signature to be placed on the faux Deed.

32. Under the pretext of assisting Plaintiff in obtaining a "senior citizen tax discount status," Defendant took advantage of the aging Joe Louis Maye and caused him to execute certain documents before a notary public which he was led to believe by Defendant were solely for purposes of obtaining that tax benefit. Plaintiff only appeared before a notary in order to execute tax relief forms. Plaintiff never understood that those documents, in part, would later be

7

used by Defendant to record a deed of transfer with the Recorder of Deeds or that she would use the notary process to trick Plaintiff into acknowledging his signature on an instrument purporting to convey an interest in the Property to Defendant.

33. In addition to and separate from the aforesaid fraud, the Deed does not convey any interest in the Property to Defendant. The faux Deed created by Defendant does not contain any language in which Plaintiff actually conveys any of his fee simple interest in the Property to Defendant or anyone else.

WHEREFORE Plaintiff Joe Louis Maye seeks a declaration and judgment that the aforesaid faux Deed is void *ab initio* and that Plaintiff is the sole owner of the Property free and clear of any interest or claim by Defendant; and that Defendant shall be ordered to execute any and all documents necessary to remove from the records of the Office of the Recorder of Deeds in the District of Columbia her claimed interest in the Property. Plaintiff further demands that he be awarded his costs, attorney fees, and expenses and for such other further relief that is just and equitable under the circumstances.

## COUNT II
(Fraud and Elder Abuse by Defendant)

34. Plaintiff incorporates and re-alleges paragraphs 1-33 above as if fully set out in this Count.

35. The actions of Defendant as alleged herein were done with fraudulent intent and were designed to surreptitiously create an interest in the Property, contrary to the wishes of Plaintiff, so that when Plaintiff died Defendant would be able to claim that she was the sole owner of the Property.

36. The actions of Defendant constitute elder abuse and financial exploitation within the meaning of D.C. Code §§ 22-933.01(a)(1) and (a)(3) (2023), in that Defendant knowingly

8

and intentionally (a) used deception obtain the property of the Plaintiff for Defendant's benefit, and (b) violated the laws of the District of Columbia and Maryland by using forgery to obtain the property of the Plaintiff.

37. Plaintiff has been damaged and injured because of the fraudulent and abusive actions of Defendant as alleged in this Count.

WHEREFORE Plaintiff Joe Louis Maye demands judgment against Defendant Tonya Jones-Sampson on this Count in the sum of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000) in compensatory damages, plus TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000) in punitive damages, plus an award of attorney fees in an amount to be determined, plus his costs and interest, and for such other relief that is just and proper under the circumstances.

### COUNT III
(Injunctive Relief – Use and Possession of the Alleged Deed)

38. Plaintiff incorporates and re-alleges paragraphs 1- 37 above as if fully set out in this Count.

39. Under Defendant's theory as to the Deed, the September 15, 2017, conveyance (if there is one) was to *both* Plaintiff and Defendant. As such they would be joint owners of the Deed and Plaintiff would have joint and equal rights to the Deed. In fact, by the express terms set forth on page three (3) of the Deed, the original instrument to be returned to the alleged Grantor, Joe Louis Maye, after it was recorded.

40. Plaintiff has demanded access to the original Deed, but Defendant has wrongfully denied Plaintiff full access to the original Deed.

41. Plaintiff has been injured and damaged as a result of Defendant's wrongful denial of access to the original Deed, has been prevented from investigating the authenticity of that

document, and has incurred and will continue to incur legal fees and other expenses as a result.

42. Plaintiff has suffered injuries that cannot be adequately redressed by monetary damages alone and is entitled to equitable relief, including a preliminary and a permanent injunction providing him with complete and unrestricted access to the original alleged Deed.

WHEREFORE Plaintiff prays for a preliminary order compelling Defendant to immediately provide Plaintiff with the original of the aforesaid Deed for purposes of examination by his counsel and for forensic inspection and analysis. Plaintiff further requests monetary judgment against the Defendant Tonya Jones-Sampson on this Count in the amount of FIFTY THOUSAND DOLLARS ($50,000) for the damages he has incurred and expects to incur in the future as a result of Defendant's wrongful denial of Plaintiff's access to the Deed.

### COUNT IV
(Breach of Duties to Plaintiff)

43. Plaintiff incorporates and re-alleges paragraphs 1-42 above as if fully set out in this Count.

44. Under Defendant's theory and claims, she is the co-owner of the Property and has been so since September 15, 2017, and she has been in control of the Property since then. As such, she owed a duty to her co-owner, Joe Louis Maye, to pay her one-half share of the property taxes, insurance, and other maintenance expenses of the Property.

45. Defendant has breached that duty by failing to pay her share of those taxes, insurance, and other maintenance expenses of the Property.

46. Under Defendant's theory and claims, she had a duty to her co-owner to collect rent from the persons using and occupying the Property and to share those rent proceeds equally with her co-owner. According to information and belief, it is estimated that the fair rental value

10

of the Property is $3000 per month.

47.     Defendant has breached her duty to Plaintiff by failing to collect rent from the persons occupying the Property or to share with Plaintiff any of the payments she has received from her relatives occupying the Property.

WHEREFORE Plaintiff Joe Louis Maye demands judgment against Defendant Tonya Jones-Sampson on this Count in the sum of ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000) together with his costs and interest and for such other relief that is just and proper under the circumstances.

## COUNT V
(Unjust Enrichment)

48.     Plaintiff incorporates and re-alleges paragraphs 1-47 above as if fully set out in this Count.

49.     Under Defendant's theory and claims, (a) Plaintiff conferred a benefit on Defendant when he transferred one-half ownership to her, (b) Defendant retained that benefit and used the Property for her benefit; and (c) under the circumstances, the Defendant's retention of the benefit is unjust.

50.     The unjust benefit received by Defendant includes but is not limited to: relief from the payment of any of the taxes, insurance and maintenance expenses of the Property, and Defendant being able to have her son and brother live at the Property rent-free.

WHEREFORE Plaintiff Joe Louis Maye demands judgment against Defendant Tonya Jones-Sampson on this Count in the sum of ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000) together with his costs and interest and for such other relief that is just and proper under the circumstances.

Respectfully Submitted,

/s/ *Randell C. Ogg*
Randell C. Ogg (USDC No. 324772)
Law Offices of Randell C. Ogg
1750 K Street, NW
Ninth Floor
Washington, D.C. 20006
Phone: (202) 808-3150
Fax: (202) 828-4130
rogg@ogg-law.com.com
Counsel for Plaintiff

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues triable by a jury.

/s/ *Randell C. Ogg*
Randell C. Ogg

12